IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-163-SPC-MRM |
| | ) | |
| THOMAS MERE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONSENT ORDER

### I. Introduction

1.      The United States initiated this action on February 29, 2016, against Defendant Thomas Mere ("Defendant") to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq.* ("FHA").

2.      Defendant owns Mere's Mobile Home & RV Park ("Subject Property"), a mobile home and recreational vehicle park located at 1555 North Tamiami Trail in North Fort Myers, Florida, with additional units and lots for rent at 1051 North Tamiami Trail and 1699 Ixora Drive in North Fort Myers, Florida.  Defendant offers mobile homes, recreational vehicle ("RV"), and RV lots at the Subject Property for rent.  Those mobile homes, recreational vehicles, and recreational vehicle lots are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

3.      At all times relevant to the Complaint, Defendant was the manager at the Subject Property.

4.      If this case were to proceed to trial, the United States would present evidence and testimony of the following:

a. The United States Department of Justice conducted testing to evaluate Defendant's compliance with the Fair Housing Act in 2014.   Testing is a simulation of a housing transaction that compares responses given by housing providers to similarly-situated home seekers with different characteristics to determine whether illegal discrimination is occurring.  As set forth below, the testing revealed that Defendant told prospective African-American renters that no mobile homes, recreational vehicles, or recreational vehicle lots were immediately available for rent, while telling similarly-situated white renters that mobile homes, recreational vehicles, or recreational vehicle lots were, in fact, available for rent.

b. The testing revealed, among other things, the following:

    i. On September 3, 2014, a black tester visited the Subject Property's rental office and asked about the availability a one-bedroom mobile home. Defendant stated, "I don't have any…well I have, I have the one-bedroom mobile home.  Yeah, I've got the one.  That's the only one I have." Defendant also told the black tester that he was in the process of selling the presumptively available mobile home, stating, "I do have a pending offer here.  A guy may want to buy it, so that can be subject to that also." Defendant suggested that the black tester "call him on Monday" for an update on the mobile home purchase.  Defendant provided no information about other available units.  Less than an hour later, a white tester visited the Subject Property and asked about the availability of a "mobile home." Defendant told the white tester that there was an available mobile home as

2

well as an available efficiency apartment.  At no point did Defendant mention to the white tester that he was in the process of selling a mobile home.  On September 8, 2014, the black tester telephoned Defendant to check on the availability of the one-bedroom mobile home.  Defendant told the black tester that he had "sold the home" and that no other mobile homes were available.  Defendant did not mention the efficiency apartment he discussed with the white tester or provide any information about other units.

ii.  On October 30, 2014, a black tester visited the Subject Property's rental office and asked about the availability of a "one-bedroom mobile home" for him and his wife.  Defendant told the black tester that the only unit he had available was a "little" efficiency that was only appropriate for "one man."  Less than two hours later, a white tester visited the Subject Property asking similarly for a one-bedroom mobile home for him and his wife.  Defendant offered the white tester a one-bedroom park model RV as well as a two-bedroom apartment unit located at another park owned by Defendant.  Neither the park model RV nor the two-bedroom apartment were offered to the black tester.

iii. On November 20, 2014, a black tester visited the Subject Property's rental office and asked about the availability of RV lots.  Defendant immediately referred the black tester to another park he owned, stating, "I have another park down here by the river that I can fix you up in."  The black tester

3

clarified, "And nothing, nothing is available here?"  Defendant did not answer the black tester's question about availability at the 1555 North Tamiami Trail location.  Less than an hour later, a white tester visited the Subject Property's rental office asking similarly about the availability of RV lots. Defendant showed the white tester four available RV lots at the 1555 North Tamiami Trail location and did not mention the other park location.

5.     The United States, in its Complaint, alleges that Defendant has:

a.     Refused to negotiate for the rental of, or otherwise made unavailable or denied dwellings to persons because of race or color, in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a); and

b.     Represented, because of race or color, that dwellings were not available for rental when such dwellings were in fact so available, in violation of Section 804(d) of the Fair Housing Act, 42 U.S.C. § 3604(d);

6.     The United States, in its Complaint, claims that Defendant has:

a.     Engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, et seq.; or

b.     Denied to a group of persons rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, et seq., which denial raises an issue of general public importance.

7.     The Defendant does not admit liability and expressly denies any liability with respect to the United States' race or color discrimination claims.

8.      The parties stipulate that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §3614(a).

9.      The parties have voluntarily agreed, as indicated by the signatures below, to resolve the United States' claims against the Defendant without the necessity of a hearing on the merits.

**Wherefore, it is ORDERED, ADJUDGED and DECREED:**

## II.  Injunction

10.     Defendant and his agents, employees, successors and all other persons in active concert or participation with Defendant, are enjoined, with respect to the rental or sale of dwellings, from:

     a.      Refusing to rent or sell a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the rental or sale of a dwelling, or otherwise making unavailable or denying a dwelling to any person because of race or color in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a); and

     b.      Representing to any person, because of race or color, that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available, in violation of Section 804(d) of the Fair Housing Act, 42 U.S.C. § 3604(d).

11.     The provisions of this Section shall apply to the Subject Property and all dwellings in which the Defendant acquires a direct or indirect ownership, management, or other financial interest.

### III.  Nondiscrimination Policy and Notice to Public

12.     Upon entry of this Consent Order, Defendant shall implement the Nondiscrimination Policy appearing at **Appendix A** at the Subject Property.

13.     Within 30 days of the date of entry of this Consent Order and throughout its term, Defendant shall distribute the Nondiscrimination Policy to all current tenants and to Defendant's employees, agents, and anyone acting under the direction of Defendant who has responsibility for showing, renting, managing, or operating any dwelling at the Subject Property.

14.     Within 30 days of the date of entry of this Consent Order, Defendant shall take the following steps at the Subject Property to notify the public of the Nondiscrimination Policy:

a.  Prominently post at the rental office that is currently or subsequently used for the rental of dwellings a fair housing sign no smaller than ten (10) inches by fourteen (14) inches that indicates that all homes, vehicles and lots are available for rent on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement;

b.  Include the words "Equal Housing Opportunity" and/or the fair housing logo in all rental advertising conducted by Defendant, or his agents or employees, in newspapers, flyers, handouts, telephone directories and other written materials; on radio, television, internet or other media broadcasts; and on all billboards, signs, pamphlets, brochures and other promotional literature; the words and/or logo shall be prominently placed and easily readable; and

6

    c.   Include the following equal housing statement in the rental application(s) and the rental agreement(s) used for rental dwelling units or lots in boldface type, using letters of equal or greater size to those of the text in the body of the document:

> We are an equal housing opportunity provider. We do not discriminate on the basis of race, color, sex, national origin, religion, disability, or familial status (having children under age 18).

## IV. Training

15.    Within 30 days of the date of entry of this Consent Order, Defendant shall provide a copy of this Consent Order to all agents and employees involved in showing, renting, managing, or operating any dwelling unit or lot at the Subject Property. Defendant shall secure a signed statement from each such agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy (Appendix A), has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and the Nondiscrimination Policy. This statement shall be in the form of **Appendix B**.

16.    Within 30 days after each new agent or employee becomes involved in showing, renting, or managing units or lots at the Subject Property, Defendant shall provide a copy of this Consent Order and the Nondiscrimination Policy to each such agent or employee and secure a signed statement from each agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy (Appendix A), has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and the policy. This statement shall be in the form of **Appendix B**.

17.     Within 120 days from the date of entry of this Consent Order, Defendant and all agents and employees associated with the operations of the Subject Property shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of race and color.  The training shall be conducted by an independent, qualified third party, approved in advance by the United States, and shall last at least two hours.  Any expenses associated with this training shall be borne by Defendant.  Each individual who receives the training shall execute the Certificate of Training, attached hereto as **Appendix C**.

18.     All new agents or employees responsible for renting, managing, and/or operating dwelling units or lots at the Subject Property must receive the fair housing training, described in Paragraph 17, within 30 days of beginning their employment or agency and shall complete **Appendix C**.

## V.  Nondiscrimination Standards and Procedures

19.     Within 45 days from the date of entry of this Consent Order, Defendant shall develop and submit to the United States, with respect to the Subject Property, objective, uniform, nondiscriminatory standards and procedures for informing persons about and showing available dwelling units or lots to prospective tenants.  Such standards and procedures shall be approved by the United States in advance of their implementation and shall be consistent with the provisions of this Section.  Within 15 days of when the United States approves the standards and procedures, Defendant shall implement and prominently display them in any office where there is rental activity and/or personal contact with applicants.  Defendant and his agents and employees shall make available a copy of these standards and procedures upon request to any applicant for the rental of a dwelling.  These standards and procedures may be modified only if

written notice is given to counsel for the United States 30 days before the proposed modifications are to take effect and the United States makes no objection thereto.

20.     The nondiscriminatory standards and procedures discussed in Paragraph 19 shall include the use of the following documents, which Defendant shall update for the Subject Property as new information becomes available, and retain:

a.     <u>Guest Cards</u>: Defendant shall ensure that, for all prospective tenants who inquire in person about dwelling units or lots, a Guest Card or other similar record is completed, either by the prospective tenant and/or Defendant, that contains:

i.     The date of the prospective tenant's visit and, when the prospective tenant agrees to provide the information, the prospective tenant's name, address, daytime, and evening telephone numbers;

ii.     The race of the prospective tenant, based on the good faith observation by the Defendant, employee, or agent;

iii.     The dwelling type the prospective tenant requests;

iv.     Whether the prospective tenant agreed to rent and the date on which the prospective tenant wishes to move;

v.     Whether the prospective tenant was invited to see available dwelling units or lots, and if not invited, an explanation why not; and

vi.     The names of all employees/agents who assisted the prospective tenant.

b.     <u>Phone Logs:</u> Defendant shall maintain, for all prospective tenants who inquire by telephone about dwelling units or lots, a phone log that contains the following information:

i.     The date of the prospective tenant's phone call and, when the prospective tenant agrees to provide the information, the prospective tenant's name and telephone number(s);

ii.    The dwelling type the prospective tenant requests;

iii.   Whether the prospective tenant was invited to see available dwelling units or lots, and if not invited, an explanation why not;

iv.    The date and time on which the prospective tenant is going to view the dwellings;

v.     Whether the prospective tenant agreed to rent and the date on which the prospective tenant wishes to move;
and

vi.    The names of all employees/agents who assisted the prospective tenant.

c.     <u>Availability List</u>:  Defendant shall maintain and timely update an Availability List that includes the unit or lot numbers known to be available or reasonably expected to be available for rental.  Defendant, or the Defendant's agents or employees, shall share the information on the Availability List with each person who visits or calls to inquire about the availability of dwelling units or lots.

       d.      <u>Waiting Lists</u>: If at any point all lots and units of the Subject Property are occupied, the Defendant, or the Defendant's agents or employees, shall (i) maintain waiting lists in order of the date a prospective tenant was deemed qualified to rent and (ii) develop uniform standards for selecting individuals from the list.

## VI. Compliance Testing

21.    The United States may take steps to monitor the Defendant's compliance with this Consent Order including, but not limited to, conducting fair housing tests at any office(s) or location(s) at which the Defendant conducts rental activities.

## VII. Reporting and Document Retention Requirements

22.    Defendant shall, no later than 30 days after occurrence, provide to the United States[1] notification and documentation of any written or oral complaint against Defendant, or Defendant's agents or employees, regarding discrimination in housing.  If the complaint is written, Defendant shall provide a copy of it with the notification.  The notification shall include the full details of the complaint, including the complainant's name, address, and telephone

---

[1]  All correspondence required to be sent to the United States under the provisions of this Consent Order shall be sent to the U.S. Department of Justice, care of the undersigned counsel for the United States, ATTN: DJ# 175-17M-509, at the following addresses:

      U.S. Mail:      950 Pennsylvania Avenue, N.W. - NWB
                         Washington, D.C. 20530

      FedEx/UPS:    1800 G Street, N.W.
                         Suite 7002
                         Washington, D.C. 20006

Correspondence may also be sent via electronic mail to the U.S. Department of Justice, care of the undersigned counsel for the United States.

number.  Defendant shall also promptly provide to the United States all information it may request concerning any such complaint and shall inform the United States within 30 days of the substance of any resolution of such complaint.

23.     Within 90 days of the date of entry of this Consent Order, and every 6 months thereafter for the duration of this Consent Order, the Defendant shall deliver to counsel for the United States a report containing information regarding his compliance efforts during the preceding reporting period, including but not limited to:

a.      Executed copies of Appendices B and C, to the extent not previously provided;

b.      Notification and documentation of the adoption and implementation of the nondiscriminatory standards and procedures discussed in Section V;

c.      Photographs of each office in which rental activity is conducted, showing the fair housing signs and Nondiscrimination Standards and Procedures, pursuant to Sections III and V of this Consent Order;

d.      Copies of rental applications, guest cards, availability lists, rental applications, and other information recorded by any means related to any inquiries regarding the availability of rental dwellings, maintained pursuant to Section V of this Consent Order;

e.      Any published advertisements pursuant to Paragraph 14(b).

The final report to the United States shall be submitted no later than 60 days before the expiration of this Order.

24.     Defendant shall preserve all records for the Subject Property that are the source of, contain, or relate to any of the information pertinent to his obligations under this Consent Order, including, but not limited to, all guest cards, availability lists, waiting lists, rental applications, leases, and any correspondence about the availability of dwelling units or lots. Upon reasonable notice to counsel for Defendant, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendant shall provide copies of such documents.

### VIII. Monetary Damages for Aggrieved Persons

25.     Within 30 days of the date of entry of this Consent Order,  Defendant shall deposit in an interest-bearing escrow account the total sum of $30,000 (thirty thousand dollars) for the purpose of compensating aggrieved persons whom the Court determines were harmed by the Defendant's discriminatory rental practices (hereinafter "aggrieved persons").  This money shall be referred to as "the Settlement Fund."  Within 15 days of the establishment of this Fund, Defendant shall submit proof to the United States that this account has been established and the funds deposited.  Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be utilized as set forth herein.

26.     Defendant shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited pursuant to Paragraph 25.

27.     Within 45 days after the date of this Consent Order, Defendant shall distribute to all tenants of properties at the locations listed in **Appendix D**, a Notice to Potential Aggrieved Persons ("Notice"), as set out in **Appendix E**.  Within 30 days after such copies of the Notice

have been delivered, Defendant shall provide the United States a signed statement attesting to the fact that it has complied with this provision of the Consent Order.

28.     Within 45 days of the effective date of this Consent Order, Defendant shall arrange and publish the Notice as follows:

a.      The Notice shall be published on at least two (2) occasions in the primary content section of the following publications:  Gypsy Journal, Southwest Florida Penny Saver, and North Fort Myers Neighbor.  The Notice shall be published in a space measuring at least one-quarter (1/4) of a page.

b.      Each Notice shall include the information set forth in Appendix E, and also contain a statement that the United States seeks information from any person who claims to have been subjected to race or color discrimination either as a tenant or applicant to the Subject Property and invite such persons to contact counsel for the United States within 120 days from the effective date of this Consent Decree.

c.      Defendant shall provide a copy of the publication containing each such Notice to counsel for the United States within 30 days of the date of publication of the Notice.

29.     To the extent that such records have not already been produced to the United States, Defendant shall produce any rental/tenancy records, or any other records in the possession, custody, or control of the Defendant, or his agents or employees, upon notice to counsel for the Defendant, that the United States believes to be useful in identifying persons who

may be entitled to relief under this Consent Order.  Upon reasonable notice, Defendant shall provide such rental/tenancy records through counsel for Defendant.

30.     Nothing in this Consent Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

31.     The United States shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such person.  The United States will inform the Defendant in writing of its determinations, together with a sworn declaration from each person setting forth the factual basis for the claim.  Defendant shall have 14 days to review the declaration(s) and provide to the United States any documents or information he believes may refute the claim(s).

32.     After reviewing Defendant's comments, the United States shall submit its final recommendations, together with a copy of the declarations and any additional information submitted by Defendant, to the Court.  However, if the Defendant agrees with the United States' recommendations, the recommendation shall be submitted to the Court in the form of a Stipulated Order.  When the Court issues an order approving or changing the United States' proposed distribution of funds, Defendant shall, within 15 days of the date of entry of the Court's order, deliver to counsel for the United States, by overnight mail, checks payable to the aggrieved persons in the amounts approved by the Court, provided that the United States shall not deliver payment pursuant to this Paragraph before the aggrieved person has executed and provided to counsel for the United States a written release (in the form of **Appendix F**) of all claims, legal or equitable, that he or she might have against Defendant.

33.     In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund plus accrued interest.

34.     After the satisfaction of Paragraphs 25-33 above, and the expiration of the corresponding time periods, any money remaining in the Settlement Fund, including interest, shall be distributed to a qualified organization(s) for the purpose of conducting enforcement or educational activities related to the Fair Housing Act in Lee County, Florida and the surrounding area, with an emphasis on the protection of the rights of minorities.  Before selecting the qualified organization(s), Defendant will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the non-objection of the United States.  The United States and Defendant may request modification of the proposal before approving the organization(s).  The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s), and Defendant shall distribute such funds within 30 days of the Court's order consistent with the terms therein.

35.     Defendant shall also advise the qualified organization(s) receiving funds, that as a condition of their receipt of funds, they must submit to Defendant and the United States a detailed report on how the funds are utilized within one year of receipt of funds, and every year thereafter until the funds are exhausted.

## IX. Civil Penalty

36.     Within 45 days after the date of entry of this Consent Order, Defendant shall pay a total of $10,000 (ten thousand dollars) to the United States as a civil penalty, pursuant to 42

U.S.C. § 3614(d)(1)(C).  This payment shall be in the form of an electronic funds transfer pursuant to written instructions by the United States.

37.     The civil penalty payment referenced in this Section is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss.

38.     Defendant has provided the following documents to the United States regarding his financial means: (1) Defendant's statement from Social Security that sets forth his Social Security benefits for the year 2015; (2) Defendant's 2014 W-2 Statement from the North Fort Myers Fire Control District; and (3) Schedule E from the 2014 Federal Income Tax Return filed jointly by Defendant and his wife, which shows the income received from the Subject Property, along with the expenses associated with the Subject Property. Collectively, these documents will be referred to as the "Defendant's income documents."  Defendant warrants that these three documents reflect the totality of his income as of December 2015. The United States has relied on the accuracy and completeness of Defendant's income documents in entering into this Consent Order, particularly Paragraphs 25 through 37. Defendant warrants that Defendant's income documents are thorough, accurate, and complete. Defendant further warrants that he does not have any other income that has not been disclosed in Defendant's income documents, and that he has made no misrepresentations on, or in connection with, Defendant's income documents. In the event the United States learns of additional income that Defendant has at the time of this Consent Order, that was not disclosed in Defendant's income documents, or a misrepresentation by Defendant in Defendant's income documents, and in the event such non-disclosure or misrepresentation increases the total amount of income received by Defendant as

set forth on Defendant's income documents by ten thousand dollars ($10,000) or more, then the United States may, at its option, (a) move the Court to rescind this Consent Order and reopen the litigation based on its Complaint, or (b) let the Consent Order stand and collect the full $75,000 penalty. In the event that the United States discovers the occurrence of an event(s) encompassed by this Paragraph, Defendant agrees not to contest the reopening of the litigation. Defendant specifically reserves the right, however, to contest any alleged misrepresentation or non-disclosure related to Defendant's income documents.

## X.  Acquisition or Transfer of Interest in Dwellings

39.     If at any time while this Consent Order remains in effect, Defendant maintains that his obligations under this Consent Order have terminated or changed because he has sold or transferred all or any portion of the Subject Property to a bona-fide third party purchaser in an arm's-length transaction, Defendant shall inform the United States within 30 days of such transaction and provide the date of the sale or transfer, copies of the sale or transfer documents, and the name(s) and contact information for the subsequent purchaser.

40.     If any transfer of the Defendant's interest in the Subject Property is not an arm's-length transaction, the Defendant and the new owner(s) shall remain jointly and severally liable for any violations of this Consent Order.

## XI. Duration, Modification, and Noncompliance with Consent Order

41.     The Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms, after which time the case shall be dismissed with prejudice.  This Consent Order shall be in effect for a period of three years from the date of its entry.  The United States may move the Court to extend the duration of the Consent Order in the event of noncompliance,

whether intentional or not, with any of its terms, or if it believes the interests of justice so require.  The Defendant has not waived the right to oppose or otherwise respond to any such request.

42.     By agreeing to entry of this Consent Order, the United States and Defendant agree that in the event Defendant engages in any future violation(s) of the Fair Housing Act, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).  This provision applies to any future violation, whether resolved voluntarily or through judicial proceedings.

43.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  However, in the event the United States contends that there has been a failure by Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Order or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

44.     Any time limits for performance imposed by this Consent Order may be extended by mutual written agreement of the parties.

## XII. Effect on Litigation Holds

45.     The parties agree that, as of the date of entry of this Consent Order, litigation is not reasonably foreseeable concerning the matters described herein.  To the extent that any party

previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Consent Order, the party is no longer required to maintain such a litigation hold.

46.     The preceding Paragraph does not relieve Defendant of the record-keeping responsibilities imposed by this Consent Order.

### XIV. Costs of Litigation

47.     The United States and Defendant will bear their own costs and attorneys' fees associated with this litigation.

**DONE** and **ORDERED** in Fort Myers, Florida, this 11th day of March 2016.

Sheri Polster Chappell
United States District Judge

# APPENDIX A

## NONDISCRIMINATION POLICY

It is the policy of Mere's Mobile Home and RV Park to comply with Title VIII of the Civil Rights Act of 1968, as amended, commonly known as the Fair Housing Act, by ensuring that apartments are available to all persons without regard to race, color, religion, national origin, disability, familial status, or sex.  This policy means that, among other things, Mere's Park and all its agents and employees with the responsibility for renting, managing, or administering any dwelling units or lots must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants.  Specifically, they may not:

    A.    Refuse to rent, refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, national origin, disability, familial status, or sex;

    B.    Discriminate against any person in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, national origin, disability, familial status, or sex;

    C.    Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, national origin, disability, familial status, or sex; or

    D.    Represent to persons because of race, color, religion, national origin, disability, familial status, or sex that any dwelling is not available for inspection or rental when such dwelling is in fact so available.

Any agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action.  Any action taken by an agent or employee that results in unequal service to, treatment of, or behavior toward tenants or actual or potential applicants on the basis of race, color, religion, national origin, disability, familial status, or sex may constitute a violation of state and federal fair housing laws.  Any tenant or applicant who believes that any of the above policies have been violated by any owner, agent, or employee may contact the U.S. Department of Housing and Urban Development at 1-800-669-9777, or the U.S. Department of Justice at 1-800-896-7743 or 202-514-4713.

**APPENDIX B**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER AND
NONDISCRIMINATION POLICY**

I acknowledge that on _____, 20__, I was provided copies of the

Consent Order entered by the Court in *United States v. Thomas Mere,* Civil Action No.

_____ (M.D. Fla.), and the Nondiscrimination Policy adopted by the Subject Property

pursuant thereto.  I have read and understand these documents and have had my questions about

these documents answered.  I understand my legal responsibilities and shall comply with those

responsibilities.

_____
Signature

_____
Print Name

_____
Job Title/Position

_____
Date

23

## APPENDIX C

## EMPLOYEE TRAINING ACKNOWLEDGMENT

I acknowledge that on _____, 20____, I received _____

minutes of in-person training on the requirements of the Fair Housing Act.


_____
Signature

_____
Print Name

_____
Job Title/Position

_____
Date

## **APPENDIX D**

## **LOCATION OF POTENTIAL AGGRIEVED PERSONS**

Mere's Mobile Home and RV Park
1555 North Tamiami Trail
North Fort Myers, Florida 33303

1051 North Tamiami Trail
North Fort Myers, Florida 33303

1699 Ixora Drive
North Fort Myers, Florida 33317

## APPENDIX E

## NOTICE TO POTENTIAL AGGRIEVED PERSONS

On February 29, 2016, the United States District Court for the Middle District of Florida entered a Consent Order resolving a lawsuit brought by the United States against Thomas Mere, concerning alleged housing discrimination at Mere's Mobile Home and RV Park ("Mere's Park"), located at 1555 North Tamiami, North Fort Myers, Florida 33903, with additional locations and units at 1051 North Tamiami Trail, North Fort Myers, Florida 33903 and 1699 Ixora Drive, North Fort Myers, Florida 33917.  The lawsuit alleged that the owner and manager of Mere's Park violated the Fair Housing Act by treating African Americans who visit the park and inquire about renting a mobile homes, recreational vehicles, recreational vehicle lots less favorably than similarly-situated white persons.  The Consent Order requires, among other things, that the Defendant provide truthful information about the availability of mobile homes, recreational vehicles, and recreational vehicle lots at Mere's Park without regard to race or color as required by the Fair Housing Act.

The Consent Order also establishes a Settlement Fund to make payments to compensate persons who are victims of this type of alleged discrimination.  You may be entitled to a monetary award from the Settlement Fund if you (1) are African American; (2) sought to live at Mere's Park; and (3) were denied the opportunity to live at Mere's Park.

If you believe you may be a victim based on the above criteria, or if you have information about someone else whom you believe may qualify, please contact the United States Department of Justice, no later than _____, at: 1-800-896-7743 and select menu option 96.

You may also send an e-mail to [fairhousing@usdoj.gov](mailto:fairhousing@usdoj.gov) or write to:

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
1800 G Street, N.W., Suite 7002
Washington, D.C. 20006
Attn: DJ# 175-17M-509

Your telephone message or letter must include your name, address, and, if possible, your e-mail

address and at least TWO telephone numbers where you may be reached.

**APPENDIX F**

**FULL AND FINAL RELEASE OF CLAIMS**

  In consideration for the parties' agreement to the terms of the Consent Order they entered into in the case of *United States v. Thomas Mere*, Civil Action No. _____,  as approved by the United States District Court for the Middle District of Florida, and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge Thomas Mere and his employees and agents from any and all fair housing claims set forth or related to the facts at issue in the litigation referenced above, or in any way related to that litigation, and any other claims arising from alleged housing discrimination that I may have had against any of them for any actions or statements related to those claims through the date of the entry of the Consent Order.

  I declare under penalty of perjury that the foregoing is true and correct.

    Executed this _____ day of _____, 20__.


           _____

               [Signature]

           _____

               [Print Name]